UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                          Case No. 20-14866-RAM

5BARZ INTERNATIONAL INC.,                                       Chapter 7

　　　　　Debtor.

_____/

**TRUSTEE'S MOTION TO APPROVE: (1) SETTLEMENT
AGREEMENT AND RELEASE; (2) ASSIGNMENT OF THE
ESTATE'S RIGHT, TITLE, AND INTEREST IN SUBSIDIARY ENTITIES AND
INTERCOMPANY RECEIVABLES; AND (3) PAYMENT OF CONTINGENCY FEE**

Joel L. Tabas, the duly appointed Chapter 7 Trustee ("Trustee") for the bankruptcy estate (the "Estate") of 5Barz International, Inc. (the "Debtor"), through undersigned counsel and pursuant to 11 U.S.C. §§ 105(a) and 363, Federal Rules of Bankruptcy Procedure 2002, 6004, and 9019, and Local Rules 6004-1 and 9019-1, files this motion (the "Motion") to (1) approve a settlement agreement and release with Daniel Bland, Gil Amelio, Samartha Raghava Nagabhushanam, Mark Geoghegan, Cubera International, Inc., Cubera Management, Inc., Cirus Foundation, and Vector Financial Group, LLC (collectively, the "Cubera Parties"), (2) approve the assignment of the Estate's right, title, and interest in subsidiary entities and intercompany receivables to Cubera International, Inc., or its designee and (3) approve payment of a contingency fee to the Trustee's counsel, Berger Singerman LLP ("Berger Singerman"), and in support thereof, states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On April 30, 2020, the Debtor filed a Chapter 11 voluntary petition. After a failed plan process, the case converted to a Chapter 7 case on November 23, 2020, and the Chapter 7 Trustee was duly appointed to administer the Chapter 7 case.

4.      Upon application by the Chapter 7 Trustee and after a hearing upon notice, the Court entered an *Order Approving the Trustee's Application for Employment of Berger Singerman LLP as Special Litigation Counsel and Approving Contingency Fee Arrangement* dated January 21, 2021 [ECF 318] ("Employment Order"). Pursuant to ¶3 of the Employment Order, Berger Singerman was to investigate and, if appropriate, pursue any and all claims or causes of action of the Estate against insiders of the Debtor, affiliates of insiders of the Debtor, transferees of property or interests in property from the Debtor, any pre-petition professionals of the Debtor or any third party associated with pre and/or post-petition actions taken by the Debtor or those in concert with the Debtor (collectively, the "Litigation Claims"). The Employment Order also approved the contingency fee arrangement described in the Application which, as pertinent here, provides for payment to Berger Singerman of thirty percent (30%) of any gross recoveries realized from the settlement of Litigation Claims. *See* Employment Order at ¶4(a) ("For any recovery received prior to the filing of a complaint in respect of any Litigation Claim – 30% of such gross Recovery").

5.      Berger Singerman undertook an extensive investigation of potential Litigation Claims for assertion against the Cubera Parties and other third parties, by reviewing the Debtor's email database, reviewing document production from the Debtor and third parties, researching information on the internet, reviewing the testimony and exhibits referenced at the Debtor's Rule 2004 examination, and analyzing the testimony given at the Debtor's section 341 meeting of creditors at the commencement of the Chapter 11 case and after conversion to the Chapter 7 case. As a result of Berger Singerman's investigations, Berger Singerman drafted an 18 count complaint

2

against the Cubera Parties and other third parties, asserting claims for breach of fiduciary duties, conspiracy to breach fiduciary duties, avoidance of post-petition transfers, avoidance of constructive and actual fraudulent transfers, conversion and unjust enrichment (the "Claims" or "Draft Complaint"). The Cubera Parties dispute the allegations and Claims asserted by the Trustee in the Draft Complaint and have asserted defenses thereto.

6.        In an effort to achieve maximum results and minimize further risk and expenses to the Estate, the Trustee and the Cubera Parties engaged in pre-suit settlement discussions over the course of several months in an effort to globally resolve all Claims. The Trustee and the Cubera Parties agree that settling the Claims are in their and the Estate's best interests. Accordingly, the Trustee and the Cubera Parties have reached a settlement that is memorialized in the *Settlement Agreement and Release* (the "Settlement Agreement and Release"), attached hereto as **Exhibit "A."**

7.        In connection with the settlement of Claims, the Trustee and the Cubera Parties have agreed that the Trustee will assign to Cubera International, Inc. or its designee, the Estate's right, title, and interest in (1) each of the Debtor's subsidiary entities listed on line 15 of the Debtor's Schedule B valued at $0 (Case No. 20-14866, ECF 32), including Cellynx Group, Inc., 5Barz SA de CV, 5Barz Pte. Ltd., 5Barz Technologies Pte. Ltd., and 5Barz India Pvt. Limited (the "Subsidiaries"); and (2) the intercompany receivables due from the Subsidiaries listed on line 71 of the Debtor's Schedule B with a current value of $0 (Case No. 20-14866, ECF 32) (the "Intercompany Receivables").

## THE PROPOSED SETTLEMENT

8.        In considering the circumstances and taking into account the nature of the dispute and the associated risks, the Trustee believes that the terms of the Settlement Agreement and

11057870-1

Release are favorable to the Debtor's Estate. The Settlement Agreement and Release provides in

pertinent part as follows:[1]

(a)    The Cubera Parties shall pay the total sum of $1,000,000.00 (the "Settlement Amount"), which amount includes the Deposit (defined below), to the Trustee by wire transfer to the Trustee's bank account within three (3) business days after entry of a final, non-appealable order of this Court granting this Motion (the "Settlement Approval Order").

(b)    The Cubera Parties shall pay a deposit of $100,000.00 to be credited towards the Settlement Amount (the "Deposit") to the Trustee by wire transfer to the Trustee's bank account within three (3) business days after the date of execution of the Settlement Agreement and Release by the last Party. The Deposit shall be refundable to the Cubera Parties only if this Agreement is not approved by the Court by the Settlement Approval Order. In all other circumstances, the Deposit shall be non-refundable. However, if the Agreement is not approved by the Court as a result of the Cubera Parties' own actions, the Deposit shall be non-refundable, and the Trustee shall be entitled to retain the Deposit for the benefit of the Estate.

(c)    Should the Cubera Parties default on payment of the Settlement Amount, the Cubera Parties agree that the Trustee shall be entitled to entry of judgment in his favor and against each of the Cubera Parties, jointly and severally, in the amount of $1,000,000.00, and the Cubera Parties shall not oppose entry of such judgment. The Cubera Parties agree that the Trustee's entitlement to this judgment shall not be deemed to be an election of remedies, and the Trustee may additionally pursue each of the Cubera Parties for the Claims or any other cause of action available to the Trustee, but the Trustee shall not be entitled to a double recovery against any Cubera Party.

(d)    The Settlement Approval Order shall provide for the assignment by the Trustee to Cubera International, Inc. (or its designee) of the Debtor's interests in (1) each of the Debtor's Subsidiaries; and (2) the Intercompany Receivables. Apart from the Settlement Approval Order, no further documentation shall be required in connection with the assignment of the Debtor's interests in the Subsidiaries and Intercompany Receivables. The assignment of the Subsidiaries and Intercompany Receivables by the Trustee to Cubera International, Inc. (or its designee) is made on an "AS-IS, WHERE-IS," basis, with no representations or warranties of any type being given by the Trustee or his professionals, and subject to any and all liens, claims, encumbrances, interests and defenses, whether known or unknown. Cubera International Inc. (or its designee) shall be responsible for the payment of any and all fees and taxes imposed by any governmental or other agency, foreign or domestic, arising from or relating to

---

[1] The following is only a summary of the Settlement Agreement and Release, which is attached as Exhibit "A" and should be read in its entirety as the terms therein control.

4

this sale and assignments, including but not limited to sales tax, documentary stamp tax and recording fees. The assignments of the Debtor's interests in the Subsidiaries and Intercompany Receivables shall be conditioned upon, and shall not be effective until, the Settlement Approval Order becomes final and non-appealable and the cleared Settlement Amount is received by the Trustee.

(e)     The Parties agree that the Court shall retain jurisdiction to enforce the Settlement Agreement and Release.

(f)     The Settlement Agreement and Release is subject to and conditioned upon the entry of the Settlement Approval Order and upon the Settlement Approval Order becoming final and non-appealable.

(g)     The Trustee and the Debtor's Estate, for good and valuable consideration received from the Cubera Parties, the receipt of which is hereby acknowledged, release the Cubera Parties as follows: the Trustee and the Debtor's Estate, including their respective agents, representatives, partners, officers, directors, employees, and attorneys (collectively, the "Trustee Releasors"), each hereby release and forever discharge the Cubera Parties, including their respective agents, representatives, partners, employees, and attorneys, except for the Doney Law Firm and all attorneys associated with the Doney Law Firm (collectively, the "Cubera Releasees") of and from all manner of claims, actions, causes of action, suits, controversies, agreements, promises, damages, judgments, and any claims and demands of any kind whatsoever, in law or in equity, known or unknown, contingent or noncontingent, liquidated or unliquidated at this time, that the Trustee Releasors now have, may have, or ever had against the Cubera Releasees for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the date of the Settlement Approval Order becoming final and non-appealable, including, but not limited to, any claims that were brought, or which could have been brought, in connection with the Claims and the Case, or any matters that are otherwise related in any way to facts or issues with respect to the Debtor. The Settlement Agreement and Release does not release the Cubera Parties' obligations under the Settlement Agreement and Release. The Settlement Agreement and Release shall be effective upon the Settlement Approval Order becoming final and non-appealable and after receipt by the Trustee of the cleared Settlement Amount.

(h)     The Cubera Parties, for good and valuable consideration received from the Trustee, the receipt of which is hereby acknowledged, release the Trustee and the Debtor's Estate as follows: the Cubera Parties, including their respective agents, representatives, partners, officers, directors, employees, and attorneys, except for the Doney Law Firm and all attorneys associated with the Doney Law Firm (collectively, the "Cubera Releasors"), each hereby release and forever discharge the Trustee and the Debtor's Estate, including their respective agents, representatives, partners, employees, and attorneys (collectively, the "Trustee Releasees") of and from all manner of claims, actions, causes of action, suits, controversies, agreements, promises, damages, judgments, and

5

any claims and demands of any kind whatsoever, in law or in equity, known or unknown, contingent or noncontingent, liquidated or unliquidated at this time, that the Cubera Releasors now have, may have, or ever had against the Trustee Releasees for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the date of the Settlement Approval Order becoming final and non-appealable, including, but not limited to, any claims that were brought, or which could have been brought, in connection with the Claims and the Case, or any matters that are otherwise related in any way to facts or issues with respect to the Debtor. The Settlement Agreement and Release does not release the Trustee's obligations under the Settlement Agreement and Release or the Vector Claim as defined below. The Settlement Agreement and Release shall be effective upon the Settlement Approval Order becoming final and non-appealable and after receipt by the Trustee of the cleared Settlement Amount.

(i)      The Cubera Parties Release shall not serve as a release by Vector Financial Group, LLC in connection with Proof of Claim 3-1 filed against the Debtor's Estate on May 20, 2020 or its chapter 11 administrative expense claim set forth on ECF 294 filed in the Case (collectively, the "Vector Claim"); provided, however, the Trustee and all interested parties retain the right to object to the Vector Claim and any component thereof. For the avoidance of doubt, the Settlement Agreement and Release and the releases contained therein shall not affect the rights or obligations of any party in connection with the Vector Claim nor shall the Settlement Approval Order serve as an adjudication of such claim.

9.      The Settlement Amount shall be allocated as follows: (i) $970,000.00 to the Claims; (ii) $5,000.00 to Cellynx Group, Inc.; (iii) $5,000.00 to 5Barz SA de CV; (iv) $5,000.00 to 5Barz Pte. Ltd.; (v) $5,000.00 to 5Barz Technologies Pte. Ltd.; (vi) $5,000.00 to 5Barz India Pvt. Limited; and (vii) $5,000.00 to the Intercompany Receivables due from the Subsidiaries.

### REQUESTED RELIEF

10.      The Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit "B,"** approving the Trustee's proposed compromise with the Cubera Parties as described herein and in the Settlement Agreement and Release attached hereto as **Exhibit "A,"** approving the assignment of the Estate's interests in the Subsidiaries and the Intercompany Receivables, and approving Berger Singerman's contingency fee.

11057870-1

## LEGAL BASIS FOR SETTLEMENT

11.     Fed. R. Bankr. P. 9019(a) provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are a normal part of the bankruptcy process. *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157 (1969) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106 (1939)).

12.     To approve a compromise and settlement under Fed. R. Bankr. P. 9019(a), a bankruptcy court should find that the compromise and settlement is fair and equitable, reasonable and in the best interests of the debtor's estate. *See, e.g., TMT Trailer Ferry*, 390 U.S. at 424; *Air Line Pilots Ass., Int'l v. America National Bank and Trustee Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 413, 426 (S.D.N.Y. 1993), *aff'd*, 17 F. 3d 600 (2d Cir. 1994).

13.     Approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988); *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) *aff'd.* 567 F.3d 1307 (11th Cir. 2010). The test is whether the proposed settlement "falls below the lowest point in the range of reasonableness." *In re Arrow Air, Inc.*, 85 B.R. at 891; *Realan Inv. Partners, LLLP v. Meinenger (In re Land Resources, LLC)*, 505 B.R. 571, 577 (M.D. Fla. 2014) (quoting *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007)) ("A bankruptcy court does not abuse its discretion in approving a settlement agreement unless the agreement 'fall[s] below the lowest point in the range of reasonableness.'"). Where, like here, "the potential augmentation of a bankruptcy estate 'involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously, and an inquiring court must afford him wide latitude in deciding whether to settle." *In re Soderstrom*, 477 B.R. 249, 252 (Bankr. M.D. Fla. 2012) (quotation omitted).

7

14.     The Court must consider the following factors in determining whether to approve the Settlement Agreement and Release: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises. *In re Justice Oaks, II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.), *cert. denied*, 498 U.S. 959 (1990) (establishing the legal standard for approval of settlements).

15.     Based on the above legal principles, the Trustee asserts that the Settlement Agreement and Release falls well above the lowest point of the range of reasonableness and, thus, should be approved. Although the Trustee believes that the Claims are meritorious, the probability of success cannot be gauged with certainty at this stage and material risk exists. Recognizing the uncertainty of litigation, and that a trial will take time, with substantial costs and fees to be incurred in connection with discovery, experts, and trial preparation, the parties agreed to engage in pre-suit settlement discussions following delivery of the Draft Complaint by the Trustee to the Cubera Parties. Additionally, there could be collection difficulties encountered by the Trustee if he were successful in his pursuit of the Claims, including against certain of the Cubera Parties that are international organizations. Accordingly, the Trustee, in his business judgment, has determined that the compromise reached with the Cubera Parties is a fair and reasonable settlement of the Claims and approval of the Settlement Agreement and Release is in the best interest of creditors.

## ASSIGNMENT OF ESTATE'S RIGHT, TITLE,
## AND INTEREST IN SUBSIDIARIES AND INTERCOMPANY RECEIVABLES

16.     In connection with the settlement of Claims, the Trustee and the Cubera Parties have agreed that the Trustee will assign the Estate's right, title, and interest in the Subsidiaries and the Intercompany Receivables to Cubera International, Inc. or its designee.

11057870-1

17.     The Court has the statutory authority to approve the sale of the Subsidiaries and the Intercompany Receivables outside the ordinary course of business, free and clear of liens. *See* 11 U.S.C. §363(b)(1) and (f). Pursuant to section 363(f) of the Bankruptcy Code, the trustee can sell all or any part of property of the estate, free and clear of any and all liens, claims, liabilities, encumbrances or other interests if:

> (i)     applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

> (ii)    each entity holding a lien, claim or interest consents;

> (iii)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (iv)    such interest is in bona fide dispute; or

> (v)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f); *Citicorp Homeowners Services, Inc. v. Elliot, et al (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections is met).

18.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Courts have held that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of the debtor's management (or the Chapter 7 Trustee here); (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith. *See In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-336 (D. Del. 1987).

9

11057870-1

19.     Here, each of the above factors is met. As a threshold matter, the Debtor does not list any secured creditors on Schedule D at ECF 32. Additionally, the sale is supported by the Trustee's sound business judgment, the sale price is fair and reasonable and the purchaser is acting in good faith. Namely, the Debtor holds a 60% ownership interest in Cellynx Group, Inc. (which owns a 100% stock interest in Cellynx, Inc.) and a 100% ownership interest in 5Barz SA de CV (Mexico company), 5Barz Pte. Ltd. (Singapore company), 5Barz Technologies Pte. Ltd. (Singapore company), and 5Barz India Pvt. Limited (Mumbai company), all of which are valued at $0.00 on the Debtor's Schedule B. *See* Line 15 of the Debtor's Schedule B at ECF 32. While the entity Cellynx, Inc. is the holder of certain intellectual property, including issued United States patents related to systems and methods for boosting cell phone signals through the use of multi-band antennae, the Debtor's principals, Daniel Bland and Samartha Nagabhushanam, have confirmed to the Trustee through counsel that none of the Subsidiaries are operational and that each has a negative equity value.

20.     The Debtor also owns an interest in certain Intercompany Receivables between the Debtor, on the one hand, and the Subsidiaries, on the other hand. The face value of the receivables is $7,079,384. *See* Line 71 of the Debtor's Schedule B at ECF 32. However, the current value of the Debtor's interest in those Intercompany Receivables is scheduled as $0.00 on the Debtor's Schedule B. *Id*. Yet, notwithstanding the valuing of the Subsidiaries and Intercompany Receivables at $0, the Cubera Parties will pay $1 million to settle the Claims and receive an assignment of the Subsidiaries and Intercompany Receivables on an "AS-IS, WHERE-IS," basis, with no representations or warranties of any type being given by the Trustee or his professionals, and subject to any and all liens, claims, encumbrances, interests and defenses, whether known or unknown. Apart from the Settlement Approval Order, no further documentation will be required in connection with the assignment of the Debtor's interests in the Subsidiaries and Intercompany

11057870-1

Receivables. As well, Cubera International Inc. or its designee will be responsible for the payment of any and all fees and taxes imposed by any governmental or other agency, foreign or domestic, arising from or relating to the sale and assignment provided for by the Settlement Agreement and Release, including but not limited to sales tax, documentary stamp tax and recording fees. Given the foregoing, the Trustee's decision to enter into the Settlement Agreement and Release is one entirely supported by his sound business judgment, the sale price is fair and reasonable and the purchaser is acting in good faith.

21.    The remaining factor for consideration by the Court (i.e., interested parties are provided with adequate and reasonable notice) will also be satisfied because creditors and other parties in interest will receive accurate and reasonable notice of the terms of the proposed sale and assignment through receipt of this Motion. With respect to satisfying the elements of the "sound business purpose" test,[2] for the reasons set forth herein, the Trustee asserts that the sale and assignment of the Estate's right, title and interest in the Subsidiaries and Intercompany Receivables in conjunction with the settlement of the Claims is the most cost efficient and expedient way to monetize the Estate's right, title and interest in such property. Without this Court's approval, there is no assurance that the Trustee will be able to monetize the Estate's right, title and interest in the Subsidiaries and Intercompany Receivables because, upon information and belief, they have little or no market value.

22.    In the exercise of the Trustee's business judgment, the sale of the Subsidiaries and Intercompany Receivables to Cubera International, Inc. or its designee pursuant to the Settlement Agreement and Release presents the best option for maximizing the value of the Debtor's interests in the Subsidiaries and Intercompany Receivables for the benefit of the Debtor's Estate and its

---

[2] *See In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

11057870-1

creditors. Accordingly, the Trustee respectfully requests that the Court approve the proposed sale and assignment outside of the ordinary course of business and that the Court waive the 14-day stay period pursuant to Fed. R. Bankr. P. 6004(h).

<h3 align="center">PAYMENT OF CONTINGENCY FEE</h3>

23.     Pursuant to the Employment Order, this Court authorized Berger Singerman to receive a 30% contingency fee for pre-suit gross recoveries in connection with the pursuit of any Litigation Claim. Employment Order at ¶¶ 3- 4. Additionally, the Employment Order authorized Berger Singerman to advance the payment of costs with the Estate being responsible to reimburse Berger Singerman for such costs. Employment Order at ¶5. The Employment Order also requires that any request for payment of compensation in connection with the settlement of a Litigation Claim be included in a motion to approve the settlement. Employment Order at ¶ 6.

24.     As a result of the settlement reached prior to the filing of a complaint, the Trustee requests that Berger Singerman's 30% contingency fee be approved and that he be authorized and directed to pay Berger Singerman $300,000.00 (30% of $1,000,000.00), plus the reasonable and necessary costs incurred by Berger Singerman in connection with the pursuit of the Litigation Claims, which total $11,321.56 as of the date of the filing of this Motion. Berger Singerman reserves the right to seek the reimbursement of additional costs incurred following the filing of this Motion. The Trustee seeks authorization to pay Berger Singerman's fees and costs from the proceeds of the instant settlement.

**WHEREFORE**, Joel L. Tabas, Trustee, respectfully requests entry of an order: (1) granting this Motion; (2) approving the Settlement Agreement and Release; (3) approving the assignment of the Estate's interest in the Subsidiaries and the Intercompany Receivables; (4) approving and directing the payment of Berger Singerman's contingency fee and reimbursement of costs; and (5) granting such other relief as the Court deems just and proper.

12

11057870-1

Dated:  December 7, 2021   Respectfully submitted,

           BERGER SINGERMAN LLP
           *Special Litigation Counsel for Trustee*
           1450 Brickell Avenue, Suite 1900
           Miami, FL 33131
           Telephone: (305) 755-9500
           Facsimile: (305) 714-4340

           By: */s/ Samuel J. Capuano*
             Paul Steven Singerman
             Florida Bar No. 378860
             singerman@bergersingerman.com
             Samuel J. Capuano
             Florida Bar No. 90946
             scapuano@bergersingerman.com

13

11057870-1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 7, 2021, a true and correct copy of the foregoing was served via electronic transmission through the Court's CM/ECF system upon all parties on the attached CM/ECF Service List. Upon the issuance of a hearing notice to consider this Motion, the undersigned counsel will serve this motion and the hearing notice upon all creditors and interested parties reflected on the Court matrix, and file a supplemental certificate of service with the Court.

By: */s/ Samuel J. Capuano*
    Samuel J. Capuano

11057870-1

## CM/ECF SERVICE LIST

- Samuel J Capuano    scapuano@bergersingerman.com,
  FSellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

- Daniel Gielchinsky    dan@dgimlaw.com,
  tatiana@dgimlaw.com;dan_1836@ecf.courtdrive.com;eservice@dgimlaw.com

- Robin M Herman    shherman1@gmail.com

- Jill E Kelso    jill.kelso@usdoj.gov

- Zakarij N Laux    zakarij.laux@usdoj.gov,
  shannon.patterson@usdoj.gov;milton.pacheco@usdoj.gov

- Justin B Levine    justin.levine@csklegal.com,
  Patricia.martel@csklegal.com;Jacob.post@csklegal.com;Courtney.dean@csklegal.com;d
  onna.scott@csklegal.com

- Nathan G Mancuso    ngm@mancuso-law.com

- Isaac M Marcushamer    isaac@dgimlaw.com, tatiana@dgimlaw.com

- Aleida Martinez Molina    aleida@axslawgroup.com, jz@axslawgroup.com

- Aleida Martinez-Molina    martinez.trustee@wsh-law.com

- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

- Steven D Schneiderman    Steven.D.Schneiderman@usdoj.gov

- Joel L Tabas    JLT@tfsmlaw.com,
  jcepero@tabassoloff.com;lshortino@tabassoloff.com;jlt@trustesolutions.net

- Joel L Tabas    jtabas@tabassoloff.com,
  jcepero@tabassoloff.com;kborrego@tabassoloff.com

- William M Uptegrove    uptegrovew@sec.gov,
  baddleyd@sec.gov;JacobsonN@SEC.GOV

11057870-1

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                    Case No. 20-14866-RAM

5BARZ INTERNATIONAL INC.,                                 Chapter 7

        Debtor.
_____/

## SETTLEMENT AGREEMENT AND RELEASE

This *Settlement Agreement and Release* ("Agreement") is made and entered into on December  6 , 2021, by and among Joel L. Tabas, the duly appointed Chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of 5Barz International, Inc. (the "Debtor"), on the one hand, and Daniel Bland, Gil Amelio, Samartha Raghava Nagabhushanam, Mark Geoghegan, Cubera International, Inc., Cubera Management, Inc., Cirus Foundation, and Vector Financial Group, LLC (collectively, the "Cubera Parties"), on the other hand. The Trustee and the Cubera Parties may be referred to individually as a "Party" and together as "Parties."

### RECITALS:

WHEREAS, on April 30, 2020, the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code, Case No. 20-bk-14866-RAM (the "Case"), in the United States Bankruptcy Court for the Southern District of Florida (the "Court"). On November 23, 2020, the Court entered an order converting the case to a Chapter 7 case and the Trustee was appointed as Chapter 7 trustee of the Debtor's Estate;

WHEREAS, the Trustee has asserted various claims against the Cubera Parties via delivery of a draft complaint, which claims include breach of fiduciary duty, conspiracy to commit breach of fiduciary duty, avoidance and recovery of fraudulent transfers, avoidance and recovery of post-petition transfers, conversion, and unjust enrichment (the "Claims");

WHEREAS, the Cubera Parties dispute the Claims asserted by the Trustee, and have asserted various defenses;

WHEREAS, the Parties have participated in extended and good faith pre-suit settlement negotiations and have reached a settlement, the terms of which are set forth in this Agreement;

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties represent, warrant, consent, and agree as follows:

11022705-2

1.      **Adoption of Recitals**. The above recitals are true and correct, are incorporated herein by this reference, and constitute a part of this Agreement.

2.      **Settlement Terms**: As full and final settlement of the Claims, subject to the conditions set forth in this Agreement, the Parties agree as follows:

     A.   The Cubera Parties shall pay the total sum of $1,000,000.00 (the "Settlement Amount"), which amount includes the Deposit (defined below), to the Trustee by wire transfer to the Trustee's bank account within three (3) business days after entry of a final, non-appealable order of the Court granting the motion to approve this Agreement (the "Settlement Approval Order").

     B.   The Cubera Parties shall pay a deposit of $100,000.00 to be credited towards the Settlement Amount (the "Deposit") to the Trustee by wire transfer to the Trustee's bank account within three (3) business days after the date of execution of this Agreement by the last Party. The Deposit shall be refundable to the Cubera Parties only if this Agreement is not approved by the Settlement Approval Order. In all other circumstances, the Deposit shall be non-refundable. However, if the Agreement is not approved by the Court as a result of the Cubera Parties' own actions, the Deposit shall be non-refundable, and the Trustee shall be entitled to retain the Deposit for the benefit of the Estate.

     C.   Should the Cubera Parties default on payment of the Settlement Amount, the Cubera Parties agree that the Trustee shall be entitled to entry of judgment in his favor and against each of the Cubera Parties, jointly and severally, in the amount of $1,000,000.00, and the Cubera Parties shall not oppose entry of such judgment. The Cubera Parties agree that the Trustee's entitlement to this judgment shall not be deemed to be an election of remedies, and the Trustee may additionally pursue each of the Cubera Parties for the Claims or any other cause of action available to the Trustee, but the Trustee shall not be entitled to a double recovery against any Cubera Party.

     D.   The Settlement Approval Order shall provide for the assignment by the Trustee to Cubera International, Inc. (or its designee) of the Debtor's interests in (1) each of the Debtor's subsidiary entities listed on line 15 of the Debtor's Schedule B (Case No. 20-14866, ECF 32), including Cellynx Group, Inc., 5Barz SA de CV, 5Barz Pte. Ltd., 5Barz Technologies Pte. Ltd., and 5Barz India Pvt. Limited (the "Subsidiaries"); and (2) the intercompany receivables due from the Subsidiaries listed on line 71 of the Debtor's Schedule B (Case No. 20-14866, ECF 32) (the "Intercompany Receivables"). Apart from the Settlement Approval Order, no further documentation shall be required in connection with the assignment of the Debtor's interests in the Subsidiaries and Intercompany Receivables. The assignment of the Subsidiaries and Intercompany Receivables by the Trustee to Cubera International, Inc. (or its designee) is made on an "AS-IS, WHERE-IS," basis, with no representations or warranties of any type being given by the Trustee or his professionals, and subject to any and all liens, claims, encumbrances,

2

interests and defenses, whether known or unknown. Cubera International Inc. (or its designee) shall be responsible for the payment of any and all fees and taxes imposed by any governmental or other agency, foreign or domestic, arising from or relating to this sale and assignments, including but not limited to sales tax, documentary stamp tax and recording fees. The assignments of the Debtor's interests in the Subsidiaries and Intercompany Receivables shall be conditioned upon, and shall not be effective until, the Settlement Approval Order becomes final and non-appealable and the cleared Settlement Amount is received by the Trustee.

E.   The Parties agree that the Court shall retain jurisdiction to enforce this Agreement.

3.        **Conditions Precedent.** This Agreement is subject to and conditioned upon the entry of the Settlement Approval Order and upon the Settlement Approval Order becoming final and non-appealable. In the event that the Court does not approve this Agreement, nothing herein shall be deemed a representation or admission by any Party as to any issue, and the Parties shall be returned to the status quo prior to the entry into this Agreement.

4.        **Trustee Release.** The Trustee and the Debtor's Estate, for good and valuable consideration received from the Cubera Parties, the receipt of which is hereby acknowledged, release the Cubera Parties as follows: the Trustee and the Debtor's Estate, including their respective agents, representatives, partners, employees, and attorneys (collectively, the "Trustee Releasors"), each hereby release and forever discharge the Cubera Parties, including their respective agents, representatives, partners, officers, directors, employees, and attorneys, except for the Doney Law Firm and all attorneys associated with the Doney Law Firm (collectively, the "Cubera Releasees") of and from all manner of claims, actions, causes of action, suits, controversies, agreements, promises, damages, judgments, and any claims and demands of any kind whatsoever, in law or in equity, known or unknown, contingent or noncontingent, liquidated or unliquidated at this time, that the Trustee Releasors now have, may have, or ever had against the Cubera Releasees for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the date of the Settlement Approval Order becoming final and non-appealable, including, but not limited to, any claims that were brought, or which could have been brought, in connection with the Claims and the Case, or any matters that are otherwise related in any way to facts or issues with respect to the Debtor. This release does not release the Cubera Parties' obligations under this Agreement. This release shall be effective upon the Settlement Approval Order becoming final and non-appealable and after receipt by the Trustee of the cleared Settlement Amount.

5.        **Cubera Parties Release.** The Cubera Parties, for good and valuable consideration received from the Trustee, the receipt of which is hereby acknowledged, release the Trustee and the Debtor's Estate as follows: the Cubera Parties, including their respective agents, representatives, partners, officers, directors, employees, except for the Doney Law Firm and all attorneys associated with the Doney Law Firm (collectively, the "Cubera Releasors"), each hereby release and forever discharge the Trustee and the Debtor's Estate, including their respective agents, representatives, partners, employees, and attorneys

3

11022705-2

(collectively, the "Trustee Releasees") of and from all manner of claims, actions, causes of action, suits, controversies, agreements, promises, damages, judgments, and any claims and demands of any kind whatsoever, in law or in equity, known or unknown, contingent or noncontingent, liquidated or unliquidated at this time, that the Cubera Releasors now have, may have, or ever had against the Trustee Releasees for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the date of the Settlement Approval Order becoming final and non-appealable, including, but not limited to, any claims that were brought, or which could have been brought, in connection with the Claims and the Case, or any matters that are otherwise related in any way to facts or issues with respect to the Debtor. This release does not release the Trustee's obligations under this Agreement or the Vector Claim as defined below. This release shall be effective upon the Settlement Approval Order becoming final and non-appealable and after receipt by the Trustee of the cleared Settlement Amount.

6.   **Vector Claim**. The Cubera Parties Release set forth in paragraph 5 above shall not serve as a release by Vector Financial Group, LLC in connection with its Proof of Claim 3-1 filed against the Debtor's Estate on May 20, 2020, or its chapter 11 administrative expense claim set forth on ECF 294 filed in the Case (collectively, the "Vector Claim"); provided, however, the Trustee and all interested parties retain the right to object to the Vector Claim and any component thereof. For the avoidance of doubt, this Agreement and the releases contained herein shall not affect the rights or obligations of any party in connection with the Vector Claim nor shall the Settlement Approval Order serve as an adjudication of such claim.

7.   **Attorney Representation**. Each Party warrants and represents that it is entering into this Agreement voluntarily, and without any duress or undue influence. Each Party further represents that it had the opportunity to consult with legal counsel of its own choosing before signing this Agreement.

8.   **Entire Agreement**. This Agreement constitutes the sole and entire settlement and release agreement between the Parties and supersedes all prior and contemporaneous statements, promises, understandings, or agreements, whether written or oral. Each Party acknowledges that no promise or inducement has been offered except as set forth herein and that this Agreement has been executed after each of the Parties has made an independent investigation of the facts and has had the opportunity to rely upon the legal knowledge and advice of attorneys in executing this Agreement.

9.   **Amendments**. This Agreement may be not be amended, modified, or altered unless such amendment is in writing and signed by all Parties and approved by the Court.

10.   **Cooperation and Best Efforts**. The Parties hereto agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Agreement and to effectuate the intent of the Parties thereto, and the Parties shall use their best efforts to obtain Court approval of the Agreement.

11.   **Applicable Law**. This Agreement shall be deemed to be made and entered into in the State of Florida and shall in all respects be interpreted, enforced, and governed under the laws of Florida, without giving effect to any conflict of laws principles.

11022705-2

12.     **Authority**. Subject to approval of the Court, the individuals executing this Agreement on behalf of the Parties have the full power and lawful authority to execute and deliver this Agreement, to perform the obligations hereunder, and to consummate the transactions contemplated hereby, as well as all of the other documents executed or delivered, or to be executed or delivered, by the Parties in connection herewith. The execution and delivery of this Agreement by the Parties and the consummation by the Parties of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of the Parties and no other corporate proceedings are necessary to authorize this Agreement or to consummate the transactions contemplated hereby. Each of the documents to which the Parties are, or will be, a party has been, or will be, duly and validly executed and delivered by the Parties, and, assuming the due authorization, execution and delivery of the documents by the other Parties, are (or when executed and delivered will be) legal, valid and binding obligations of the Parties.

13.     **No Adverse Construction**. The Parties acknowledge that this Agreement has been prepared by each of them. In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

14.     **Waiver**. The failure of either Party to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every other provision of this Agreement. The rights granted the Parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such party's right to assert all other legal remedies available to it under the circumstances.

15.     **Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

*[Signature pages follow]*

11022705-2

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

ACCEPTED AND AGREED:

Joel L. Tabas, Chapter 7 Trustee of the
bankruptcy estate of 5Barz International, Inc.

Daniel Bland, individually

Gil Amelio, individually

Samartha Raghava Nagabhushanam,
individually

Mark Geoghegan, individually

Cubera International, Inc., a Nevada
Corporation

Cubera Management, Inc., a Florida
Corporation

By: _____

By: Daniel Bland

Title: CO—CEO

Title: CEO

Girus Foundation, a Cook Islands Company

Vector Financial Group, LLC, a Florida
limited liability company

By: Daniel Bland

By: _____

Title: Co—founder

Title: _____

6

11022705-2

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

ACCEPTED AND AGREED:

_____
Joel L. Tabas, Chapter 7 Trustee of the
bankruptcy estate of 5Barz International, Inc.

_____
Daniel Bland, individually

_____
Samartha Raghava Nagabhushanam,
individually

_____
Cubera International, Inc., a Nevada
Corporation

By: _____

Title: _____

_____
Cirus Foundation, a Cook Islands Company

By: _____

Title: _____

_____
Gil Amelio, individually

_____
Mark Geoghegan, individually

_____
Cubera Management, Inc., a Florida
Corporation

By: _____

Title: _____

_____
Vector Financial Group, LLC, a Florida
limited liability company

By: _MARK Geoghegan_____

Title: _President,_____

6

11022705-2

# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                        Case No. 20-14866-RAM

5BARZ INTERNATIONAL INC.,                    Chapter 7

                Debtor.

_____/

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE (1) SETTLEMENT
AGREEMENT AND RELEASE; (2) ASSIGNMENT OF THE ESTATE'S RIGHT, TITLE
AND INTEREST IN SUBSIDIARY ENTITIES AND INTERCOMPANY
RECEIVABLES; AND (3) PAYMENT OF CONTINGENCY FEE**

        **THIS MATTER** came before the Court at a duly noticed hearing on _____ at

_____ a.m./p.m. upon the *Trustee's Motion to Approve: (1) Settlement Agreement and Release; (2)*

*Assignment of the Estate's Right, Title, and Interest in Subsidiary Entities and Intercompany*

*Receivables; and (3) Payment of Contingency Fee* [ECF No. _____] (the "Motion"). In ruling on

the Motion, the Court, has considered the Settlement Agreement and Release[1] attached to the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

11038917-1

Motion as Exhibit "A," the representations made by the Trustee in the Motion regarding the assignment and sale of the Debtor's interests in the Subsidiaries and Intercompany Receivables and the Employment Order authorizing Berger Singerman's contingency fee. The Court, having considered the foregoing matters and argument of counsel at the hearing, finds that: (i) due and appropriate notice of the Motion and the relief to be granted by this Order has been provided with all parties in interest having the opportunity to be heard on the Motion and the relief requested therein; (ii) the settlement contained in the Settlement Agreement and Release falls above the lowest point in the range of reasonableness as contemplated by applicable caselaw and satisfies the factors set forth in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990); (iii) the factors set forth in applicable caselaw and section 363 of the Bankruptcy Code have been satisfied to authorize the assignment of the Debtor's interests in the Subsidiaries and Intercompany Receivables outside the ordinary course of business free and clear of all liens; and (iv) the Court's Employment Order authorizes compensation payable to Berger Singerman as set forth below. With the Court being fully advised in the premises,

**IT IS ORDERED** that:

1.      The Motion is **GRANTED**.

2.      The Settlement Agreement and Release attached to the Motion as Exhibit "A" is **APPROVED** and, accordingly, subject to this Order becoming final and non-appealable and the Trustee's timely receipt of the Settlement Amount:

        a.      The Debtor's interests in the Subsidiaries and Intercompany Receivables are hereby assigned by the Trustee to Cubera International, Inc. or its designee on an "AS-IS, WHERE-IS," basis, with no representations or warranties of any type being given by the Trustee or his professionals, and subject to any and all liens, claims, encumbrances, interests and defenses,

2

whether known or unknown.  This Order shall serve as an assignment of the Estate's right, title and interest in the Subsidiaries and Intercompany Receivables without further documentation. Cubera International Inc. or its designee shall be responsible for the payment of any and all fees and taxes imposed by any governmental or other agency, foreign or domestic, arising from or relating to the sale and assignment provided for by the Settlement Agreement and Release, including but not limited to sales tax, documentary stamp tax and recording fees.

b.      Berger Singerman is entitled to a 30% contingency fee totaling $300,000.00 (30% of the $1,000,000.00 Settlement Amount), reasonable and necessary costs ("Costs") in the amount of $11,321.56 incurred as of the filing of the Motion and any additional Costs incurred by Berger Singerman after the filing of the Motion, and the Trustee shall pay said sums to Berger Singerman out of the Settlement Amount.

3.      The Court waives the fourteen (14) day stay period under Fed. R. Bankr. P. 6004(h) so that this Order shall become immediately effective.

4.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Paul Steven Singerman, Esq.
Samuel J. Capuano, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340
Email:  singerman@bergersngerman.com
Email:  scapuano@bergersingerman.com

Copy furnished to:
Samuel J. Capuano, Esq.
*(Samuel J. Capuano, Esq. is directed to serve a copy of this Order upon interested parties and file with the Court a certificate of service.)*

3

11038917-1